UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| CARROLL WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5: 19-73-JMH |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DR. TERRE ADAMS, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

While incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), *pro se* plaintiff Carroll Washington injured his bicep. Washington was taken to the University of Kentucky Medical Center for evaluation, and orthopedic surgeons recommended that he promptly receive an MRI followed by, depending on the test results, surgery. However, FMC-Lexington did not provide Washington with the recommended MRI until four months later. At that point, the University of Kentucky surgeon no longer felt that Washington's bicep could be effectively repaired through surgery.

In light of the delayed treatment and his lingering injury, Washington seeks relief from the United States via the Federal Tort Claims Act. He also alleges a *Bivens* claim against Dr. Terre Adams of FMC-Lexington. Dr. Adams and the United States have jointly moved to dismiss or, in the alternative, for summary

1

judgment on all claims. [R. 14.] For the reasons that follow, the defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.**

In August 2017, Carroll Washington was incarcerated at FMC-Lexington in Lexington, Kentucky.[1] According to the complaint, Washington first injured his bicep on August 16, 2017, while helping another inmate move a locker. [R. 7 at 3.] On August 29, 2017, Washington was taken to the University of Kentucky Medical Center ("UK") for treatment, where an orthopedic surgeon found that Washington had likely suffered a left distal bicep rupture. The surgeon's note states that Washington would be scheduled for surgery if the distal bicep rupture was confirmed via MRI. [R. 14-3 at 26.] The medical note lists the MRI as "due" on September 8, 2017, with surgery to be done "after MRI completed." [R. 14-3 at 26.] Upon Washington's return to FMC-Lexington that day, a Federal Bureau of Prisons ("BOP") medical trip return encounter was performed. The BOP assessment states that Washington "needs an MRI of left upper arm for probable Bicep Rupture asap." [R. 14-3 at 21.]

Despite the seemingly time-sensitive nature of the UK surgeon's recommendation to undergo MRI testing, Washington received neither an MRI nor surgery by September 8. The record

---

[1] Washington has since been released on good time credit.

suggests that FMC-Lexington first received the official medical records from UK on September 6, 2017, and that Dr. Adams was notified of these records twenty days later on September 26, 2017. [R. 14-1 at 5.] Although Dr. Adams signed the order requesting an MRI the very next day, an MRI was still not attempted until November 9, 2017. [*Id.* at 5-6.] Then, because Washington was too large for the onsite mobile MRI unit, the November 9 attempt failed. Washington finally received the needed MRI on December 20, 2017, and he was seen by UK orthopedics two days later. [*Id.* at 6.] At that point, the surgeon noted that Washington indeed had a bicep tendon tear that affected the majority of the tendon. The surgeon further stated that "[t]here is very little tendon remaining below the myotendinous junction, making direct repair impossible." [R. 1-3 at 6.] The defendants interpret this finding to mean that the surgeon would not perform surgery because of the type of injury revealed on the MRI. [R. 14-3 at 5.] But Washington claims that the four-month delay caused his injury to be such that surgery would no longer prove effective. [*See, e.g.*, R. 21 at 5-6.]

Washington sues Dr. Adams pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), claiming his Eighth Amendment right was violated by the delayed MRI and resulting irreparable injury. Washington also seeks relief from the United States under the Federal Tort Claims

3

Act. The Court previously conducted a preliminary screening of Washington's claims and served the defendants with the complaint. [R. 9.] The defendants have now responded to the complaint with a joint motion to dismiss or, in the alternative, motion for summary judgment. [R. 14.] No discovery has been completed.

**II.**

The Court first addresses Washington's *Bivens* claim against Dr. Adams. To the extent Washington seeks relief from Dr. Adams for an alleged violation of his Eighth Amendment rights, that claim is dismissed for Washington's failure to exhaust his administrative remedies. Although Washington appears to have filed twenty-two administrative remedy requests during BOP tenure, the record indicates that none of those requests pertain to Dr. Adams, and none of them were filed at FMC-Lexington. [*See* R. 14-1 at 7.] Under the terms of the Prison Litigation Reform Act, pursuing administrative relief is a prerequisite to seeking money damages under *Bivens*. *See, e.g.*, 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Because Washington has not exhausted his Eighth Amendment claim against Dr. Adams with the BOP, he may not proceed with that claim here. Accordingly, the defendants' motion to dismiss the *Bivens* claim will be granted.

Washington's claim against the United States is not as easily resolved. The Federal Tort Claims Act ("FTCA") allows a plaintiff to recover money damages from the United States for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope . . . of employment." 28 U.S.C. § 1346(b). Washington alleges the medical care he received for his bicep injury—specifically, FMC-Lexington's delay in providing him with the ordered MRI—was negligent. [*See, e.g.*, R. 7.] "Liability under the FTCA is determined by reference to the law of the state where the alleged medical malpractice or negligence occurred." *Shedden v. United States*, 101 F. App'x 114, 115-16 (6th Cir. 2004) (citations omitted). Thus, in Washington's case, Kentucky medical malpractice law applies.

Under Kentucky law, "a plaintiff alleging medical malpractice must prove that a medical provider failed to adhere to the standard of care of a reasonably competent practitioner in the same medical field, proximately causing the plaintiff's injury." *Matthews v. Robinson*, 52 F. App'x 808, 809-10 (6th Cir. 2002) (citing *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982); *Blair v. Eblen*, 461 S.W.2d 370, 373 (Ky. 1970)). "Generally, expert testimony is required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff's injury." *Id.* (citing

*Vance*, 90 F.3d at 1148; *Jarboe v. Harting*, 397 S.W.2d 775, 777-78 (Ky. 1965)).

Limited exceptions to this general rule apply. Expert testimony is not required in *res ipsa loquitur* cases "where the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." *See Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010) (internal quotation marks and citation omitted). This occurs, for instance, "where the surgeon leaves a foreign object in the body" or operates on the wrong organ or limb. *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006). Further, expert testimony is unnecessary where "the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently." *Id.* at 171.

In this case, Washington has not presented expert testimony in support of his medical malpractice claim. Instead, Washington merely indicates that "no expert testimony is available" and he thus attempts to rely on one of the two exceptions outlined above. [*See* R. 21 at 2.]

However, the first *res ipsa loquitur* exception does not apply. This Court has recognized that "delay-based allegations . . . are fundamentally different from a surgeon leaving a foreign object in a person or operating on the wrong part of the body." *Earle v. United States*, No. 6:13-184-DLB, 2016 WL 8814363, at *6 (E.D. Ky.

Feb. 8, 2016). And Kentucky courts have found essentially the same. *See Jones v. Gaes*, No. 2009-SC-780, 2011 WL 1642225, at *3 (Ky. April 21, 2011) ("Absent expert testimony, a layperson is not competent to determine whether the alleged delay by Dr. Jones in recognizing and treating Gaes's perforated colon was the proximate cause of her pain and suffering, the colostomy procedure, or her ongoing medical problems.").

Further, on the present record, the second exception based on defendant admissions also does not appear to apply. That said, the Sixth Circuit has noted that the relevant defendant admissions "may be supplied . . . during discovery." *Vance*, 90 F.3d at 1148. And no discovery in this matter has been conducted.

"The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Id.* While the defendants correctly note that Washington has not explicitly requested discovery in this case, the fact remains that "an expert's opinion frequently is not obtained until after such discovery is conducted." *Id.* at 1149. "Thus, the evidence that [the defendants] fault [Washington] for not providing is evidence which he was neither required nor likely to have obtained prior to filing suit."[2] *Id.* So while the

---

[2] Notably, Washington was able to obtain and provide one medical record pertinent to his case. [*See* R. 21-1.] Perhaps, given a reasonable opportunity to conduct discovery, Washington could obtain actual expert testimony from that physician regarding the impact (if any) of the delayed MRI.

defendants' arguments are well taken, the Court nevertheless finds it would be premature to grant summary judgment at this time, when dealing with a *pro se* party and where "*no* discovery was conducted before the motion for summary judgment was filed." *Id.* (emphasis in original); *Lytle v. United States*, No. 5:18-0599-KKC, 2018 WL 5268613 (E.D. Ky. Oct. 23, 2018) (denying motion to dismiss or, in the alternative, motion for summary judgment in similar case).

**III.**

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The defendants' motion to dismiss or, in the alternative, motion for summary judgment [R. 14] is **GRANTED IN PART** and **DENIED IN PART**.

2. The Court **GRANTS** the defendants' motion with respect to Washington's *Bivens* claim against Dr. Terre Adams. Accordingly, Dr. Adams is **DISMISSED** as a defendant in this case.

3. The Court **DENIES WITHOUT PREJUDICE** the defendants' motion with respect to Washington's FTCA medical malpractice claim.

4. Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct all further pretrial proceedings, including overseeing discovery and preparing proposed findings of fact and recommendations on any future dispositive motions.

5. The Clerk of the Court shall **ASSIGN** this matter to the relevant Magistrate Judge.

This the 4th day of October, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge