UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CARROLL L. WASHINGTON, JR, | ) |
| | ) |
| Plaintiff, | ) No. 5:19-CV-73-JMH-HAI |
| | ) |
| v. | ) |
| | ) RECOMMENDED DISPOSITION |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Former prisoner Carroll Washington brought this *pro se* action in February 2019, alleging improper medical care at the Federal Medical Center in Lexington. D.E. 1. The defendants moved for dismissal or, alternatively, for summary judgment. D.E. 14. In October 2019, Judge Hood granted the motion in part, leaving only Washington's medical negligence claim against the United States under the Federal Tort Claims Act ("FTCA"). D.E. 23.

Judge Hood described this case as follows:

> In August 2017, Carroll Washington was incarcerated at FMC Lexington in Lexington, Kentucky. According to the complaint, Washington first injured his bicep on August 16, 2017, while helping another inmate move a locker. [R. 7 at 3.] On August 29, 2017, Washington was taken to the University of Kentucky Medical Center ("UK") for treatment, where an orthopedic surgeon found that Washington had likely suffered a left distal bicep rupture. The surgeon's note states that Washington would be scheduled for surgery if the distal bicep rupture was confirmed via MRI. [R.14-3 at 26.] The medical note lists the MRI as "due" on September 8, 2017, with surgery to be done "after MRI completed." [R. 14-3 at 26.] Upon Washington's return to FMC-Lexington that day, a Federal Bureau of Prisons ("BOP") medical trip return encounter was performed. The BOP assessment states that Washington "needs an MRI of left upper arm for probable Bicep Rupture asap." [R. 14-3 at 21.]

1

> Despite the seemingly time-sensitive nature of the UK surgeon's recommendation to undergo MRI testing, Washington received neither an MRI nor surgery by September 8. The record suggests that FMC-Lexington first received the official medical records from UK on September 6, 2017, and that Dr. Adams was notified of these records twenty days later on September 26, 2017. [R. 14-1 at 5.] Although Dr. Adams signed the order requesting an MRI the very next day, an MRI was still not attempted until November 9, 2017. [*Id.* at 5-6.] Then, because Washington was too large for the onsite mobile MRI unit, the November 9 attempt failed. Washington finally received the needed MRI on December 20, 2017, and he was seen by UK orthopedics two days later. [*Id.* at 6.] At that point, the surgeon noted that Washington indeed had a bicep tendon tear that affected the majority of the tendon. The surgeon further stated that "[t]here is very little tendon remaining below the myotendinous junction, making direct repair impossible." [R. 1-3 at 6.] The defendants interpret this finding to mean that the surgeon would not perform surgery because of the type of injury revealed on the MRI. [R. 14-3 at 5.] But Washington claims that the four-month delay caused his injury to be such that surgery would no longer prove effective. [*See, e.g.*, R. 21 at 5- 6.]

D.E. 23 at 2-3.

Washington asserted two claims in his Complaint. First, Washington sued Dr. Adams under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), claiming his Eighth Amendment right was violated by the delayed MRI and resulting irreparable injury. Judge Hood dismissed this claim on account of Washington's failure to exhaust his administrative remedies. D.E. 23 at 4, 8.

Second, Washington also sought relief from the government under the Federal Tort Claims Act. District Judge Hood allowed this claim to proceed, but he made clear that, to prove his claim, it was necessary for Washington to obtain expert testimony in his favor:

> Under Kentucky law, "a plaintiff alleging medical malpractice must prove that a medical provider failed to adhere to the standard of care of a reasonably competent practitioner in the same medical field, proximately causing the plaintiff's injury." *Matthews v. Robinson*, 52 F. App'x 808, 809-10 (6th Cir. 2002) (citing *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982); *Blair v. Eblen*, 461 S.W.2d 370, 373 (Ky. 1970)). "Generally, expert testimony is required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff's injury." *Id.* (citing *Vance*, 90 F.3d at 1148; *Jarboe v. Harting*, 397 S.W.2d 775, 777-78 (Ky. 1965)).

2

D.E. 23 at 5-6.

Although there are two exceptions to this expert-testimony rule, Judge Hood found that neither applies in this case. D.E. 23. at 6-7. Judge Hood noted that discovery had not yet commenced, and Washington thus might be able to obtain expert testimony during the discovery period. *Id*. at 7-8. In particular, Judge Hood noted that Washington had obtained at least one medical record, and, given time, he "could obtain actual expert testimony from that physician regarding the impact (if any) of the delayed MRI." *Id*. at 7 n.2.

Judge Hood then referred this matter to the undersigned "to conduct all further pretrial proceedings, including overseeing discovery and preparing proposed findings of fact and recommendations on any future dispositive motions." *Id*. at 8. The undersigned entered a scheduling order that governed discovery and the briefing of dispositive motions. D.E. 26.

On May 1, 2020, the government filed a timely motion to dismiss or, in the alternative, for summary judgment. D.E. 37. The Court informed Washington that any response was due by June 1, and warned him: "As explained in Joint Local Civil Rule 7.1(c), 'Failure to timely respond to a motion may be grounds for granting the motion.'" D.E. 38. Washington moved for an extension of time, and his response deadline was continued to July 17. D.E. 40. Yet Washington did not file a timely response. The Court construes the government's motion as one for summary judgment.

### I. Washington's Failure to Respond to the Government's Motion

Where a party "fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision); *see also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008)

3

(finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). Joint Local Civil Rule 7.1(c) also provides that a failure to file a response in accordance with a court's scheduling order may be grounds for granting a motion for summary judgment.

Here, Washington has filed no timely response nor a request for an extension of the July 17 deadline. The Court may therefore grant the government's motion based on the lack of response.

However, in granting a motion that will dispose of a claim, courts should make certain that a moving party has satisfied its burden under the Federal Rules. "[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The Court will therefore briefly address the merits of Washington's FTCA medical negligence claim.

## II. Washington's Medical Negligence Claim

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Parties moving for summary judgment are not required to put forth affirmative evidence to negate the existence of elements required by the non-moving party's claim. *Id.* at 324. It is sufficient for a moving party to merely state that there is an absence of evidence supporting the non-moving party's claim. *Id.* Once this is done, it then becomes the responsibility of the non-moving party to provide evidence which establishes an actual issue for trial. *See Employers Ins. Of Wausau v.*

4

*Petroleum Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Here, even accepting as true all of Washington's factual allegations, his claim fails as a matter of law due to his failure to establish the applicable duty of care using expert testimony, as required by Kentucky law.

In *United States v. Muniz*, 374 U.S. 150 (1963), the Supreme Court held that the FTCA applies to federal inmates' claims alleging personal injuries sustained—while incarcerated—as a result of the negligence of government employees. Liability under the FTCA is generally determined by the law of the state where the alleged injury occurred. *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). An FTCA claim may be asserted only against the United States. 28 U.S.C. § 2674; *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

Under Kentucky negligence law, including medical negligence, the Plaintiff must establish the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence. *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687-88 (Ky. 2003), *as amended* (Aug. 27, 2003); *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1997).

"Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010); *accord Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. Ct. App. 2007). "[T]he plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard

of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). Expert testimony demonstrating "the standard of care recognized by the medical community as applicable to the particular defendant" is necessary to establish a prima facie case of medical negligence. *Sandler v. United States*, No. 6:11-CV-206-GFVT, 2013 WL 5468493, at *6 (E.D. Ky. Sept. 30, 2013) (quoting *Heavrin v. Jones*, No. 02-CA-16-MR, 2003 WL 21673958, at * 1 (Ky. Ct. App. July 18, 2003)). "It is the Plaintiff's burden to find a doctor who will testify to the standard of treatment of each condition and testify that in his or her expert opinion, the standard was breached by the federal employee(s) in this case." *Id*. (quoting *Hernandez v. United States,* No. 5:08-CV-195-KSF, 2009 WL 1586809, at *6 (E.D. Ky. June 5, 2009)); *see also Partin v. Tilford*, No. 5:13-CV-193-CRS, 2016 WL 3212248, at *2 (W.D. Ky. June 7, 2016) (granting summary judgment when plaintiff failed to establish "what a proper [treatment] entails"); *Smith v. Rees*, No. 5:07-CV-180-TBR, 2011 WL 3236635, at *3 (W.D. Ky. July 28, 2011) (requiring expert testimony to establish the standard of care); *Beard v. United States*, No. 5:08-CV-105-KSF, 2009 WL 305893, at *7-9 (E.D. Ky. Feb. 6, 2009) (granting summary judgment when plaintiff offered no expert proof establishing the standard of care); *Hitch v. St. Elizabeth Med. Ctr., Inc.*, No. 2014-CA-1361-MR, 2016 WL 1557734, at *2 (Ky. Ct. App. Apr. 15, 2016) (granting summary judgment when the expert "make no statement to indicate what the standard of care is"); *Tackett v. Appalachian Reg'l Healthcare, Inc.*, No. 2007-CA-720-MR, 2008 WL 2779528, at *2-4 (Ky. Ct. App. July 18, 2008) (granting summary judgment when the plaintiff's expert "failed to produce evidence as to the medical standard of care at issue").

Exceptions to this expert-testimony rule exist, including "*res ipsa loquitur* cases" and cases where the physician admitted negligence. *Blankenship*, 302 S.W.3d at 670. Judge Hood already determined that neither exception fits the alleged facts of this case. D.E. 23 at 6-7. And, because Washington has not responded to the motion, he has given the Court no reason to revisit this finding.

Judge Hood previously instructed Washington that proving his medical negligence claim requires expert testimony. D.E. 23 at 5-8. Washington's claim is that FMC staff exacerbated his injury by failing to timely provide the prescribed MRI. Because Washington's medical negligence claim is based on delay, it requires an expert witness. *Id.* at 6-7. Approximately ten months have passed since Judge Hood's order.

Washington filed a letter dated February 27, 2020, in which he identified two potential experts under Federal Rule of Civil Procedure 26(a)(1)(A)(i)—Dr. Carolyn Hettrich and Dr. Kevin Cronlin. D.E. 27. Washington stated that these witnesses would testify that they both treated him at UK on August 29, 2017. He stated they would testify about their diagnoses and recommendations. *Id*. Washington has not submitted an affidavit from either physician. Nor did he suggest they would testify that the standard of care had been violated in his case. *Id*. He only suggested their testimony "would entail the appropriate standard of care in cases involving a distal biceps tear." *Id*. at 2.

The following month, the Court granted permission for Washington to add a third potential expert witness—Dr. Zachary Zimmer at George Washington University Hospital. D.E. 28, 35. Washington stated that Dr. Zimmer treated him after his release from custody. D.E. 28. According to Washington, Dr. Zimmer's testimony "would reflect the observations he made during the course of treatment [and] detail the appropriate standard of care for a torn bicep

7

injury." *Id*. at 1. "Specifically, his testimony would explain the significance of surgery for an individual Plaintiff's age who is an active adult and plans to rely on his arms for work." *Id*. But again, no affidavit from Dr. Zimmer was submitted. Nor does Washington suggest Dr. Zimmer would testify that the standard of care had been violated.

The government accordingly asserts the record contains no evidence to support a finding under Kentucky law that the standard of care was violated in Washington's case. D.E. 37-1. As Rule 56(c) makes clear, to counter the government's assertion, Washington must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other [such] materials." Fed. R. Civ. P. 56(c)(1)(a). Washington has cited to no such evidentiary materials. Given that there is no genuine issue of material fact as to the standard of care, the government's summary judgment motion should be granted.

### III. Conclusion

The undersigned **RECOMMENDS** that the government's motion for summary judgment (D.E. 37) be **GRANTED**. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 13th day of August, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge